# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 28, 2015

Plaintiff-Appellee,

v

No. 320095
Tuscola Circuit Court
LC No. 13-012824-FC

JAMIE CHRISTOPHER ARNETT,

Defendant-Appellant.

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

HOEKSTRA, P.J., *(concurring)*.

I concur with the majority in affirming defendant's conviction. I write separately to more fully explain why I agree that defendant is not entitled to a new trial based on trial counsel's failure to object to the vouching testimony presented by the prosecution.

On appeal, defendant maintains that his trial counsel provided ineffective assistance by failing to object to vouching testimony from three witnesses, all of whom indicated that they believed the victim to be telling the truth. Specifically, the victim's mother and grandmother stated that they believed the victim. Most troublingly, Amber Spencer, a witness qualified as an expert in the area of forensic interviewing, testified without objection, based on her "training and experience," that in her opinion the victim told the truth about the abuse.

Because it is the province of the jury to determine the truthfulness of a witness, "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). Vouching testimony from an expert in cases involving criminal sexual conduct has been recognized as particularly troublesome. See *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995) ("[A]n expert may not vouch for the veracity of a victim.").

> The use of expert testimony in the prosecution of criminal sexual conduct cases is not an ordinary situation. Given the nature of the offense and the terrible consequences of a miscalculation-the consequences when an individual, on many occasions a family member, is falsely accused of one of society's most heinous offenses, or, conversely, when one who commits such a crime would go unpunished and a possible reoccurrence of the act would go unprevented-appropriate safeguards are necessary. *To a jury recognizing the awesome*

-1-

*dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat.* [*Id.* at 374 (quotation omitted; emphasis in original).]

Given that vouching testimony is plainly inadmissible, it follows that counsel's performance may be considered to fall below an objective standard of reasonableness when counsel fails to object to the admission of such testimony and there is no apparent strategy for failing to object. See *People v Douglas*, 496 Mich 557, 586; 852 NW2d 587 (2014). In cases where "the prosecution's case hinged wholly on the credibility" of the victim's allegations, given the influential nature of expert testimony on credibility, failure to object to vouching testimony may also establish that there is a reasonable probability that the outcome of the trial would have been different. See *id.* at 586-587. In *Douglas*, for example, the offense alleged was the defendant's sexual abuse of his three-year-old daughter, and defense counsel failed to object to vouching testimony from three witnesses, one of whom, like Spencer in the present case, offered an expert opinion of the victim's credibility. The Court in *Douglas* found no sound trial strategy for failing to object to this testimony and therefore concluded that counsel's performance fell below an objective standard of reasonableness. *Id.* at 586. The Court also determined that counsel's deficiencies prejudiced defendant. In doing so, the Court reasoned that the victim's credibility was central to the prosecution's case and the Court emphasized that there was a "lack of evidence beyond her allegations," including no physical evidence whatsoever and no third-party witnesses to the alleged abuse. *Id.* at 567, 580, 587-588.

In this case, regarding counsel's performance, it is difficult to conceive of a sound trial strategy for failing to object. The prosecution proposes on appeal that counsel's decision not to object to vouching testimony may have been a reasonable strategic decision designed not to highlight the testimony in question.[1] While arguably this might excuse counsel's failure to object to vouching by the victim's mother and grandmother, whose testimony might have reasonably been viewed as less influential, it does not provide a sound basis for counsel's failure to object to Spencer's expert opinion of the victim's credibility which was plainly inadmissible and highly prejudicial to defendant's position. Cf. *id.* at 586-587. Accordingly, I agree with the majority that defendant's counsel's performance fell below an objective standard of reasonableness.

Nonetheless, because there is evidence in this case beyond the victim's allegations, the case can be distinguished from *Douglas*, and defendant has not made the requisite showing of prejudice necessary to establish the ineffective assistance of counsel. In particular, in contrast to *Douglas*, there is some physical evidence in this case supporting the victim's allegations of sexual abuse. Namely, a sexual assault nurse examiner who examined the victim observed lacerations on the victim's labia minora. The nurse examiner explained that such lacerations are

---

[1] In its brief, the prosecution also suggests that counsel's decision not to object to vouching testimony was reasonable because "the testimony stated nothing the average juror did not already presume—that the witnesses testifying for the prosecution, and witnesses related to [the victim], believed her." This reasoning was rejected in *Douglas*, 496 Mich at 587 n 11.

not common in a child the victim's age and that, though not conclusive, the lacerations were consistent with the victim's report of penetration. Further, the victim reported that some of the assaults occurred in the bedroom that defendant shared with the victim's mother and that defendant would lock the door to the bedroom during the assaults. One of the victim's brothers testified that on numerous occasions the victim and defendant were in the bedroom with the door locked for about 10 minutes at a time. Police confirmed that the bedroom door had a lock. Given this evidence supporting the victim's allegations, the present case was not a "pure credibility contest," and it is not reasonably probable that the vouching testimony, while improper, affected the outcome of the trial. See *Douglas*, 496 Mich at 580, 587-588.

/s/ Joel P. Hoekstra